RITTER, by Guardian *ad litem,* Respondent, v. COCA-COLA COMPANY (Kenosha-Racine), INC., Appellant.

*April 28—June 2, 1964.*

For the appellant there was a brief by *Mittelstaed, Heide, Sheldon & Hartley* and *William A. Sheldon,* all of Kenosha, and oral argument by *William A. Sheldon.*

For the respondent there was a brief by *Foley, Capwell, Foley & Kolbe* of Racine, and oral argument by *Rex Capwell.*

WILKIE, J.   The entire controversy on this appeal con-
cerns the medical testimony of Dr. Bacon.   At the trial, he
testified that Miss Ritter had consulted him on March 16,
1961.

Miss Ritter's counsel then asked: *"Q.* And what did she
relate to you at that time Doctor?"

At this point, appellant's counsel objected to Dr. Bacon
testifying as to what subjective symptoms Miss Ritter re-
lated to him, on the ground that since Miss Ritter had
already retained counsel for the purpose of commencing an
action in relation to the mouse-in-the-bottle episode, her
visit to Dr. Bacon could only be viewed as undertaken for
the purpose of securing expert testimony to support her cause
of action, rather than seeking treatment, and that under the
*Kath* rule, testimony by a physician relating to a party's
report of "subjective" symptoms to him is inadmissible
unless the consultation with the physician is undertaken
*solely* for the purpose of treatment.[1]

The trial court overruled appellant's objection.

Dr. Bacon then testified as to Miss Ritter's report to him
as to the details of the episode, and her feelings and re-
sponses immediately surrounding the event.   He further
testified as to Miss Ritter's report to him in relation to her
continuing symptoms of avoidance of nontranslucent liquids,
inability to sleep, troubled dreams, and fear of mice.   Dr.
Bacon concluded to a reasonable medical certainty that these
indicia of psychological stress were causally related to the
episode of March 2, 1961.

The first issue presented on this appeal is whether Coca-
Cola's claim of error was properly preserved for appeal to
this court.

---

[1] *Kath v. Wisconsin Central R. Co.* (1904), 121 Wis. 503, 99
N. W. 217. *Thompson v. Nee* (1961), 12 Wis. (2d) 326, 107 N. W.
(2d) 150. *Plesko v. Milwaukee* (1963), 19 Wis. (2d) 210, 120
N. W. (2d) 130.

In his motion for a new trial after verdict, appellant's counsel simply alleged, among other grounds, that a new trial was justified "because of error of trial in the receipt of evidence." Because the motion papers do not specify in detail the precise nature of the evidentiary error, the appellant did not properly preserve the alleged error for appeal to this court, assuming that his allegation was not elaborated by oral argument or briefs on motions after verdict.[2]

While appellant did not in fact elaborate his allegation of evidentiary error by means of oral argument or brief, it is clear that he was not given an opportunity to do so, though he made such request.

Appellant's only notice of the July 2d hearing set for argument on motions after verdict was contained in the respondent's motion papers. Although the appellant asked the court to set a time for argument on its motion, and to provide an opportunity to be heard, the trial court did not directly apprise the appellant's counsel of the time for argument. Because counsel was denied an opportunity to present his claim of error as the basis for his motion for a new trial, we exercise our discretionary power under sec. 251.09, Stats., to consider the merits of appellant's claim.

Therefore, the second, *and major,* issue raised on this appeal is: Was Dr. Bacon's testimony relating to Miss Ritter's report of her feelings, anxieties, and dream content, properly admitted into evidence?

In *Kath* this court held that a physician may not testify as to statements made by a patient to him regarding subjective symptoms connected with his injury, if in addition to seeking treatment for his injury the patient is motivated to seek consultation for the purpose of obtaining expert medical

---

[2] *Plesko v. Milwaukee, supra; Michalski v. Wagner* (1960), 9 Wis. (2d) 22, 100 N. W. (2d) 354; *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 80 N. W. (2d) 380.

testimony.[3] The applicability and extent of the *Kath* rule has been the subject of further rulings by this court. In *Schields v. Fredrick*[4] this court applied and extended *Kath* when it ruled that a physician, consulted for the first time on the day before trial to testify as to the injuries of one of the parties, could not testify either as to a history of the injuries given to the doctor by the claimant or as to subjective symptoms as narrated to him by the claimant, and when the court further held that the doctor could not give his medical opinion, based in part on these statements, as to the relation between the accident and the injuries and related discomfort.[5]

In *La Fave v. Lemke*[6] the court distinguished *Kath* when the family physician, who did not see the injured person until three days after the accident, was permitted to testify about what the claimant told him about areas of his body that were painful. The court said (p. 509) that the "so-called recitation of subjective symptoms amounts to no more than a direction of the doctor's attention to the parts to be examined."

In *Thompson v. Nee*[7] the court found that the claimant had gone to a neurosurgeon for treatment only and the doctor was then allowed to testify about subjective symptoms told to him by the patient who, for several months after the accident, had undergone treatment by orthopedic surgeons who did not relieve the injury.

In *Plesko v. Milwaukee, supra,* testimony of a physician who was first consulted four years before trial but one year

---

[3] *Kath v. Wisconsin Central R. Co., supra.*

[4] (1939), 232 Wis. 595, 288 N. W. 241.

[5] The physician may nevertheless give his medical opinion on the basis of a proper hypothetical question, which is predicated on the subjective symptoms if such have been put in evidence by the direct testimony of the claimant. *Kreyer v. Farmers' Co-operative Lumber Co.* (1962), 18 Wis. (2d) 67, 117 N. W. (2d) 646.

[6] (1958), 3 Wis. (2d) 502, 89 N. W. (2d) 312.

[7] (1961), 12 Wis. (2d) 326, 107 N. W. (2d) 150.

after injury, was admitted as to subjective symptoms related to the physician during all his examinations throughout the years, except for symptoms stated to the doctor during the final examination on the day before trial (excluded on authority of *Schields*).

In *Rasmussen v. Metropolitan Casualty Ins. Co.* [8] and in both *Thompson* and *Plesko,* the fact that a person had retained counsel in relation to a possible lawsuit arising out of the injury-producing event prior to consulting a physician was held not in and of itself to support an inference that he was seeking objectives other than treatment when he consulted the physician.

Essentially under these rulings, the holding in *Kath* has been retained while at the same time allowing a doctor to testify as to a patient's subjective symptoms recited to the doctor during a consultation, which consultation, according to evidence in the record, by inference, may have been arranged for the twofold purpose of treatment plus examination prior to testifying but concerning which the trial court has ruled that the sole motivation of the claimant in arranging for the consultation was treatment. We see no logic in continuing in adherence to the *Kath* rule and conclude that if the trial court determines that a consultation is made by a claimant with a physician for the *bona fide* purpose of treatment, the fact that the claimant also desires to utilize the physician as a witness on the trial in relation to his injury will not preclude the physician from testifying as to the patient's report of his subjective symptoms or from predicating medical conclusions upon such reports.

Such a change in the *Kath* rule simply recognizes the realities of modern medical practice in the clinical diagnosis of a patient's condition alleged to be due to the injury-causing event and prescribing treatment for such condition.

---

[8] (1953), 264 Wis. 432, 59 N. W. (2d) 457.

Every physician consulting with a patient who is alleged to have been injured takes the patient's history and. makes his diagnosis based not only on his objective findings made on examination, but also with due regard to the statements made by the patient both as to his history and as to his subjective complaints. The physician brings to the diagnosis his clinical evaluative skills, which he has acquired through rigorous professional training and extensive clinical experience.

The rationale of the *Kath* rule regards statements made by the patient to the physician as hearsay and in the nature of self-serving declarations. *Kath* allows testimony concerning such statements where made to a physician while undergoing treatment, but excludes the testimony where dual motivation is established. This distinction is unrealistic. If the testimony on statements made in one context is admissible then logically such testimony should also be admissible where the statements are made in the other context.

As long as a patient goes to a physician with the *bona fide* purpose of receiving treatment, the basic desire of a patient to get well, we believe, will generally motivate him to tell the truth and this is sufficient reason to allow the attending physician to testify about statements made to him which may touch on his history and his subjective symptoms. Cross-examination and argument are available to opposing counsel as a means of testing such testimony. Under the circumstances of this case, Miss Ritter can be deemed to have *only* been seeking psychotherapeutic treatment when she consulted with Dr. Bacon on March 16, 1961. There was no testimony to the contrary. The injury-producing event occurred two weeks prior to the consultation. On the day after the incident, Miss Ritter had consulted Dr. Duncan, who informed her that she had sustained no toxic or physiological injury. When her symptoms persisted, Miss Ritter then consulted Dr. Bacon as a psychiatrist, with a

view of obtaining psychotherapeutic relief for her symptoms. It was over two years after this consultation that Dr. Bacon was actually called upon to testify.

Under *Kath,* either as applied prior to this decision or as modified herein, it is clear that Dr. Bacon could properly testify as to Miss Ritter's statements to him relating to her subjective emotional experience, and could properly predicate his medical conclusion as to the causal relationship between the episode in issue and her emotional and psychological distress upon such reports.

Appellant's request for a new trial in the interests of justice must therefore be denied.

*By the Court.*—Judgment affirmed.