ERDMANN, Respondent, v. FRAZIN, d/b/a PRENTICE DRUG
COMPANY, Appellant.*

*No. 220. Argued April 8, 1968.—Decided May 7, 1968.*
(Also reported in 158 N. W. 2d 281.)

* Motion for rehearing denied, with costs, on June 28, 1968.

2

4

For the appellant there was a brief by *Merten, Connell & Sisolak* and *Walter L. Merten,* all of Milwaukee, and oral argument by *Walter L. Merten.*

For the respondent there was a brief by *Boren & Schmidt* and *Morton J. Schmidt,* all of Cudahy, and oral argument by *Morton J. Schmidt.*

ROBERT W. HANSEN, J. "On a clear day you can see forever," the playwright and songwriter agreed. It does not take so clear a day to determine exactly where this accident occurred. Even on so clear a day it would be difficult to determine how and why it happened.

That the entrance platform to the drugstore was defective and that the accident occurred in the exact area of the defect cannot be disputed. Witnesses testified that the broken-down area of the platform was "all jagged." The defect was repaired soon after the mishap. In her testimony, the plaintiff placed herself precisely in the area of disrepair at the time of the accident. There is undisputed evidence of a violation of the safe-place statute and credible evidence that the accident took place at the unsafe place.

*Presumption of causation?*

Is there then a presumption of causation from the fact alone that the accident occurred at the unsafe place? The answer is that there is. This court has said:

". . . our decisions, and those of other jurisdictions over the years, demonstrate that when one owing a duty to make a place or an employment safe fails to do it and that accident occurs which performance of the duty was designed to prevent, then the law presumes that the damage resulted from—was caused by—the failure. The presumption may be rebutted, but if not rebutted by evidence, the plaintiff has met his burden of proof." [1]

[1] *Umnus v. Wisconsin Public Service Corp.* (1952), 260 Wis. 433, 438, 51 N. W. 2d 42, quoted with approval in *Cossette v. Lepp* (1968), 38 Wis. 2d 392, 157 N. W. 2d 629.

In the *Umnus Case*, the owner of a building did not fence an opening in the flat roof of his building. The deceased employee fell through the opening. No one knew how or why. Causation was presumed. In the *Cossette Case*, the defective or unsafe condition was the absence of a handrail on a stairway. A causal connection between the fall and the defect was presumed. In another case no presumption of causation was found because the accident or injury did not occur at the place where the defect existed,[2] but that is not the situation here. Yet another case presented a fact situation similar to the one here involved. The owner and operator of a tavern violated the safe-place statute because outdoor steps leading to the entrance of the tavern did not meet minimum requirements as to size and were not finished with a nonslippery surface. Plaintiff in that case, while leaving the tavern, stepped down one step with her left foot, turned to the right and felt her foot go out from under her causing her to fall. Upon review, this court found a presumption of causation.[3]

## *Was presumption rebutted?*

Was the presumption of causation rebutted in this case? If so, the rebuttal would have to come from the testimony of the plaintiff herself. There were no witnesses or at least no witnesses testified at the trial. The testimony of the plaintiff does little to dispel the fog as to what occurred. Appellant's brief describes her answers to inquiries concerning how the accident happened as "nothing more than a litany of 'I don't know' responses," and that is descriptive. On six separate occasions during direct and cross-examination, she stated, "I don't know what happened." She did state from the witness stand that she was stepping off the entrance

---

[2] *Ruplinger v. Theiler* (1959), 6 Wis. 2d 493, 95 N. W. 2d 254.
[3] *Candell v. Skaar* (1958), 3 Wis. 2d 544, 89 N. W. 2d 274.

platform, had one foot on the sidewalk when her other foot ". . . just took me like a wind, a jet, right into the air," which describes but does not really explain exactly what happened and why. Nothing plus nothing adds up to nothing and there is little here that could be construed as rebuttal of the presumption of causation. In any event, certainly in the area of credibility, both the jury and the trial court have great advantages over an appellate tribunal in evaluating the testimony and determining credibility. This applies to the dispute as to an earlier statement allegedly made to an investigator by the plaintiff while still in the hospital. The investigator testified that the lady said she ". . . forgot that the drop-off was there . . . ." The plaintiff denied making that statement. Whether she did or did not was for the jury to determine.

### What about the photograph?

Plaintiff introduced into evidence a photograph of the entranceway to the store taken two years after the accident. Defendant objected and objects to the introduction of the photo primarily because it was too remote in time and was not an exact reproduction of the disrepair situation as it existed at the time of the accident. However, the photograph was not introduced nor represented as showing the condition of the entranceway at the time of the accident. It was introduced only to picture the nature of the entrance and to permit the plaintiff to locate on the photograph where on the entrance platform the accident had occurred. This court has stated:

"It is discretionary with the trial court to admit photographs to aid the jury in securing a clear idea of a material situation when the photographs better show that situation than does the testimony of witnesses." [4]

[4] *Neuenfeldt v. State* (1965), 29 Wis. 2d 20, 32, 33, 138 N. W. 2d 252.

We have stated:

"There must always be some substantial, legitimate reason for the use of such representations [photographs] or they should not be received." [5]

For the limited purpose for which the photograph was introduced and used, there was such legitimate reason here, and there clearly was no abuse of discretion.

### Doctor or witness?

Appellant contends that the trial court erred in permitting Dr. Leo Weinshel to testify as a treating physician as to plaintiff's subjective symptoms and as to medical conclusions based thereon. Appellant argues that the doctor was consulted as a medical witness, not as a treating physician. It is true that testimony established that plaintiff saw Dr. Weinshel at her attorney's request, that his services were procured by the attorney and that he expected to be paid by the attorney. It is also true that at the time of the examination by Dr. Weinshel, the plaintiff had not seen a physician for over one year. The plaintiff's daughter testified that she was worried about her mother's health, that her mother was complaining about her hip and ankle, that she asked the attorney for a list of doctors her mother might see, that the attorney furnished a list of six doctors. On the testimony presented, the trial court found that the plaintiff contacted Dr. Weinshel for the purpose of treatment and examination to determine if further treatment was needed. To reach a different conclusion, this court would have to find unbelievable testimony that the trial court believed. We have no reason to do so. The trial court having determined that the consultation was made by the plaintiff with the doctor for the bona fide purpose of

---

[5] *Cottrill v. Pinkerton* (1933), 211 Wis. 310, 317, 248 N. W. 124.

treatment, the fact that the plaintiff or her attorney also desired to utilize the physician as a witness at the trial in relation to the injury does not preclude the physician from testifying as to the patient's report of subjective symptoms or from predicating medical conclusions upon such reports.[6]

### Instruction on construction?

Appellant seeks reversal based on the refusal of the trial court to instruct the jury on the duty of the owner corporation concerning the construction of the platform involved. The trial court refused to give the requested instruction for the reason that its inclusion was not warranted by the evidence. The only testimony that would appear at all related to the original constructing of the platform was given by plaintiff's witnesses. One testified, "That [the entrance] gets awful slippery on there when it's damp." Another testified, "I slipped off lots of times when it was slippery out." There is no evidence in the record to indicate that it was either damp or slippery on the day of the accident. The conclusion of the trial court that inclusion of an instruction as to construction was not warranted by the evidence seems inescapable.

### Are the damages excessive?

Appellant submits that this court should find the damages awarded by the jury and upheld by the trial court to be excessive. We see no reason so to do in this case. This court has stated:

"The amount of damages awarded is a matter resting largely in the discretion of the jury. The verdict will not be upset merely because the award was large or because

---

[6] *Ritter v. Coca-Cola Co.* (1964), 24 Wis. 2d 157, 128 N. W. 2d 439.

the reviewing court would have awarded a lesser amount, but rather only where it is so excessive as to indicate that it resulted from passion, prejudice, or corruption, or a disregard of the evidence or applicable rules of law." [7]

With that as the litmus paper, the jury award here passes the test.

The jury awarded $4,000 for past pain, suffering and disability, and $10,000 for future pain, suffering and disability. The surgery involved was not minor. There is credible evidence in the record to establish that the plaintiff experienced both pain and disability, and that she will suffer future pain and a permanent motion loss in her hips and legs. She can walk but should use a cane to protect her hip joint and never will be able to walk as well as she did before the accident. She will have difficulty walking up and down stairs, being on her feet for any protracted period of time or walking any considerable distance. The damages awarded do not appear in any sense excessive. As to the objection that the damage award includes an allowance based on feelings of depression based on her enforced inactivity, it is enough to say that some degree of dissatisfaction and depression would be to be expected under circumstances such as these. As to the impact of the injury and the effect of the disability upon a person in the senior years of living, there is no reason to dilute or dispute the words of the trial judge in this case:

". . . the last years of one's life as one realizes they approach because of advancing years are cherished. There is a sense that life's work is done and the last years are to be enjoyed. Obviously they are precious. Hence destruction or impairment of the enjoyment of such years has special meaning."

*By the Court.*—Judgment affirmed.

[7] *Kablitz v. Hoeft* (1964), 25 Wis. 2d 518, 525, 131 N. W. 2d 346.